1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8   JOHN E. JAMES,                     )   No. C 05-1811 JSW (PR)
                                       )
9             Plaintiff,               )
                                       )   **ORDER GRANTING**
10                                     )   **DEFENDANT'S MOTION FOR**
                                       )   **SUMMARY JUDGMENT**
11        v.                           )
                                       )
12  DONALD C. POMPAN, M.D., ET AL.,    )
                                       )
13            Defendant.               )   (Docket Nos. 16, 50)
                                       )
14  _____   )

15

16          Plaintiff, a prisoner of the State of California currently incarcerated at Salinas

17  Valley State Prison (SVSP) in Soledad, California, filed this *pro se* civil rights action

18  pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District

19  of California.  In an order dated February 17, 2005, Magistrate Judge Beck found that

20  Plaintiff stated cognizable claims for relief against Defendants at SVSP for deliberate

21  indifference to Plaintiff's serious medical needs.  On April 20, 2005, Eastern District

22  Judge Ishi adopted the findings and recommendations in full and transferred the case to

23  this Court.

24          On December 23, 2005, this Court ordered service of these claims on Defendants

25  Pompan, Bowman, Helmer, Thor, Golin, Burn, Fernandez, Hernandez and Rankin

26  (docket no. 5).   After service was issued, the U.S. Marshal informed the Court that

27  service had not been completed on Defendants Golin, Burn, and Hernandez.  After

28  Plaintiff subsequently provided the Court with additional identifying information for

1  Defendant Nurse Gosling, the Court again ordered service by the U.S. Marshal.  On July

2  25, 2007, the U. S. Marshal informed the Court that service had not been effected on this

3  Defendant as she was no longer at SVSP and that service attempted on her last known

4  address had been unsuccessful.  On July 24, 2007, Petitioner filed a notice with the Court

5  identifying Defendant Burn as Officer Ybarra and voluntarily dismissing Defendant

6  Hernandez from this action (docket no. 51).

7  Defendants Fernandez, Bowman, Thor, Pompan, Rankin and Helmer filed a

8  motion for summary judgment on the grounds that there is no genuine issue of material

9  fact in dispute and that Defendants are entitled to judgment as a matter of law because no

10  violation of the Eighth Amendment occurred, there is no supervisory liability and

11  Defendants maintain qualified immunity from liability.  Plaintiff has filed an opposition

12  to the motion and Defendants have filed a reply.  Plaintiff has also filed a motion seeking

13  adjudication of all outstanding motions, which is now GRANTED (docket no. 50).

## STATEMENT OF FACTS

15  The facts are as follows and are undisputed, unless otherwise stated: Plaintiff was

16  treated for a dislocated shoulder at SVSP after being transferred there in January, 2002.

17  Plaintiff had suffered this recurring injury since at least March 22, 2001, when he sought

18  treatment over a period of 10 months at Pleasant Valley State Prison for "recurrent

19  chronic shoulder dislocations; resulting in severe pain and permanent disability."

20  Amended Complaint ("Am. Compl.") at 5A-1-2.  After transferring to SVSP on January

21  2, 2002, and suffering another shoulder dislocation on March 9, 2002, Plaintiff sought

22  and received medical attention.  *Id.* at 5A-2.  Plaintiff contends that he received medical

23  attention at SVSP for this condition on another seven occasions before surgery was

24  performed in late July.  *Id.* at 5A-2.

25  Plaintiff saw Dr. Pompan for an orthopedic consultation at SVSP on June 18,

26  2002.  Declaration of Dr. Pompan in Support of Summary Judgment Motion ("Pompan

27

28  2

Decl.") at 2.   After Dr. Pompan evaluated his injury, Plaintiff was scheduled for surgery on July 23, 2002. *Id.*  On July 16, 2002, Plaintiff saw Dr. Pompan for his pre-operative evaluation. *Id.*  At that time, Dr. Pompan discussed the risks and benefits of surgery, including the possibilities of stiffness, loss of range of motion, infection, bleeding, numbness, pain, recurrence and that the surgery may make Plaintiff's injury worse. *Id.* Dr. Pompan asserts that he explained to Plaintiff that for rehabilitation, he

> would most likely be doing a 'self supervised exercise program' as it would be difficult to obtain therapy in prison...and noted in the medical records that 'he understands there is no therapy' at the prison and that he 'may get a few visits at the hospital' and...would need to go to the hospital for any therapy'.  Mr. James indicated that he understood he would have to play an active role in his own rehabilitation  *Id.*

In opposition to the motion, Plaintiff does not contradict Dr. Pompan regarding their discussion of his rehabilitation prior to the surgery.

On July 23, 2002, after Plaintiff signed an informed consent declaration acknowledging that the risks of the surgery were explained to him, Dr. Pompan performed surgery on Plaintiff's shoulder at Natividad Medical Center. *Id.* at 2-3.  There were no complications during the surgery. *Id.*

After surgery, Plaintiff was placed in a "shoulder immobilizer" to keep his shoulder elevated and immobilized for a week and was returned to SVSP the same day as the surgery. *See,* Pompan Decl. at 3.  Plaintiff was given post-operative instructions by the discharge nurse and was discharged from the recovery unit back to the prison in stable condition. *Id.*

Plaintiff's pre-printed discharge instructions specified that if he experienced any: unexpected pain, bleeding, inability to urinate, fever or rash, or vomiting, "you may contact OPPS until 5 p.m. at 755-4258 or call the Emergency Room at 755-6268." Young Decl. at F-12.  The pre-printed information on the form also specified that he should keep the arm elevated to reduce swelling and pain; to keep the dressing clean and dry; not to take showers or drive until cleared by doctor; and advise doctor if he noticed

color change, fever, or numbness.  *Id.*  The form also included specific written instructions filled in by the doctor, to keep his left shoulder, left arm still; avoid too much movement; keep arm brace on; and that the prescribed vicodin could be taken "if needed for pain."  *Id.*

After surgery, Dr. Pompan provided Plaintiff with a prescription for Vicodin for pain.  *Id.*  He also asserts that non-prescription medications, such as ibuprofen are taken as needed for post-operative pain and inflammation.  *Id.*

Plaintiff alleges in his complaint that Defendant Correctional Lieutenant Burns (identified hereafter as "Ybarra") was responsible for ensuring that he received post-operative care at SVSP.  Apparently, Ybarra signed for the post operative instructions on July 23, 2002, on Plaintiff's return to SVSP.  However, other than the fact that this Defendant signed for the instructions when Plaintiff was released for return to SVSP after surgery, *see,* Young Decl., F-12, Plaintiff provides no other evidence in support of his assertion that this corrections officer was responsible for his medical care.

Plaintiff was evaluated by Dr. Helmer at 3:00 p.m. upon his return from Natividad Medical Center and his dressing was noted to be "ok."  Declaration of C. Young in Support of Defendants' motion for Summary Judgment ("Young Decl."), Exh. H-23.

According to Plaintiff, about forty minutes after returning to the prison from surgery, he was returned to his cell.  Plaintiff's Amended Complaint at 5A-4.  Plaintiff alleges that after returning to his cell, his surgical wound began bleeding excessively and he experienced severe pain, nausea, weakness and dizziness.  *Id.*  Plaintiff's witness, Inmate Smith, declares that at that time when Plaintiff and he called for medical attention, after he and Plaintiff had attempted to have Defendant Juarez contact the M.T.A. for medical attention, Correctional Officer Fernandez

> told C/O Juarez to call the M.T.A. approx: 1630 Hrs.  C/O Juarez didn't make the call saying that the M.T.A. wasn't coming because of another inmate that was in the Medical holding area within the (A-Facility), C/O Juarez called again approx: 1647 Hrs.  Where M.T.A. Clearly stated that

4

they refuse to attend to Inmate James Medical Condition." Declaration of Inmate Smith, Exhibit M.2 in Support of Plaintiff's Opposition.

The declaration further states that several inmates and Fernandez called to have the emergency medical response button pressed and that "Juarez refused to push the button" at which time Plaintiff was escorted by Fernandez in a wheelchair to the M.T.A. office. *See also,* Am. Compl. at 5-A5.

According to notes of the nurse in the A-yard infirmary, M. Gosling, Plaintiff was seen there at 4:55 p.m.  Young Decl., Exh. H-25.  She noted that Plaintiff was bleeding through his dressing and that she was sending him to the E.R. for evaluation and reinforcement.  *Id.*  Nurse Gosling noted that at 5:10 p.m., the E.R. nurse came "but did not take" Plaintiff and "[r]eported that Drs. Bowman and Helmer had seen [inmate] and decided was ok to send to yard.  Drs. stated to just reinforce dressing and will see [inmate] in the AM." *Id.*  Nurse Gosling noted that a "pad was placed under left arm in armpit to soak up bleeding.  Custody officers were present and spoke to ER nurse.  Will notify ER if further bleeding occurs." *Id.*

Plaintiff complains that Defendant Lieutenant Rankin was apprised of C.T.C.'s refusal to accept Plaintiff for emergency care "at which time Defendant Rankin ordered staff to return Plaintiff to his assigned cell." Am. Compl. at 5A-5-6.  Defendant Bowman's declaration provides that custodial staff are authorized to escort inmates to the Correctional Treatment Center or the yard infirmary when they need medical attention. Bowman Decl. at 2.  If the medical staff determine that an inmate is fit to return to custody, custodial staff will do so.  *Id.*

At approximately 6:05 p.m. on July 23, 2002, Dr. Haffner made an entry in Plaintiff's medical record that he spoke to an ER nurse about Plaintiff's condition. Young Decl., Exh. H at 24.  Dr. Haffner also prescribed a dose of MS Contin and Tylenol as well for post-operative pain, noting "since we do not have [vicodin], I will cover him tonight with Roxicodone for immediate onset and M.S. Contin to carry him

5

through the night and tylenol to synergize." *Id.* Dr. Bowman attests to the fact that these drugs in combination are an appropriate treatment for post-operative pain. Bowman Decl. at 3.

According to Dr. Robert Bowman, a surgical wound can take 6 hours to stop bleeding. *Id.* at 2. Dr. Bowman attests that many of the side effects Plaintiff complained of on return to SVSP: nausea, pain, dizziness and weakness are common post-anesthesia symptoms. *Id.*

On July 24, 2002, Plaintiff was seen by Dr. Lee and Dr. Helmer noted in Plaintiff's chart that his dressings from the surgery, which were soaked with blood, were changed. Plaintiff's Opposition at 11; Young Decl., Exh. H-24. Dr. Helmer also noted that Plaintiff complained of a sore throat, which Helmer noted was a result of a swollen uvula, caused by intubation through the throat during surgery. Dr. Haffner prescribed Tylenol 975 mg. for Plaintiff on July 24, 2002. Young Decl., Exh. I at 41.

Dr. Bowman prescribed Roxicodone on July 24, because SVSP does not stock Vicodin. Bowman Decl. at 2. As Plaintiff addresses in his opposition, his medical records reflect that the facility was out of Roxicodone and a note was made by an unknown official that Plaintiff should be given tylenol with codeine on 7/24/02 and 7/25/02 am, returning to Roxicodone for the pm dose, and a note is made to "please stoke [sic] ward with Roxicodone as they are both out." Young Decl., Exh. I at 43. Plaintiff was seen by Nurse Gosling on July 25, 2002. Young Decl., Exh. H at 26.

Plaintiff alleges in the Amended Complaint that on July 26, 2002, he was provided with Tylenol 3 for pain instead of the vicodin which was insufficient to control the pain. Am. Compl. at 5A-6. However, in his opposition to the motion, he swears that notwithstanding the prescriptions issued for him, he never received this or other painkillers on July 23, 2002 through December 2002. Opposition at 14.

Dr. Bowman authorized a lower bunk placement for Plaintiff on July 30, 2002 and examined Plaintiff the next day. He noted that the incision from surgery looked clean and that Plaintiff continued to wear the shoulder immobilizer. Plaintiff had follow up

with Dr. Pompan on August 1, 2002, August 6, 2002 and August 20, 2002, September 25, 2002 and November 19, 2002.

According to the complaint, Plaintiff asserts that he next received a sterile dressing of the surgical wound from medical staff on August 6, 2002.  Plaintiff complains that he repeatedly requested physical therapy, as part of his post-surgical treatment plan.  Plaintiff was transferred out of SVSP on January 23, 2003.

## STANDARD OF REVIEW

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.  However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th

Cir. 2005) (in equal protection case, conclusory statement of bias not sufficient to carry non-moving party's burden).

A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56. *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). Like a verified complaint, a verified motion functions as an affidavit. *See Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998). Accordingly, the Court treats Plaintiff's verified amended complaint as well as Plaintiff's response as opposing affidavits to the extent they are based on personal knowledge and sets forth specific facts admissible in evidence. *See Id.*; *Schroeder*, 55 F.3d at 460.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" actions which violated his or her rights. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See*

*Keenan,* 91 F.3d at 1279; s*ee, e.g., Carmen v. San Francisco Unified School District*, 237

F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which

creates a genuine issue of material fact, a district court may grant summary judgment if

the opposing papers do not include or conveniently refer to that evidence).

## DISCUSSION

## I.      Deliberate Indifference to Serious Medical Needs

Plaintiff's allegations of deliberate indifference to his serious medical needs were

found to state cognizable claims under the Eighth Amendment.  The Eighth Amendment

requires that prison officials take reasonable measures to guarantee the safety of

prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Deliberate indifference to serious medical needs violates the Eighth Amendment's

proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104

(1976).  A determination of "deliberate indifference" involves an examination of two

elements: the seriousness of the prisoner's medical need and the nature of the

defendant's response to that need.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133,

1136 (9th Cir. 1997) (en banc)

A "serious" medical need exists if the failure to treat a prisoner's condition could

result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.*

(citing *Estelle v. Gamble*, 429 U.S. at 104).  The existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence

of a medical condition that significantly affects an individual's daily activities; or the

existence of chronic and substantial pain are examples of indications that a prisoner has a

"serious" need for medical treatment.  *See id.* at 1059-60 (citing *Wood v. Housewright*,

900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a

substantial risk of serious harm and disregards that risk by failing to take reasonable

steps to abate it.  *Farmer*, 511 U.S. at 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Id.*  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  *See McGuckin*, 974 F.2d at 1060.  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however.  Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights, *see McGuckin*, 974 F.2d at 1060, 1061 (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")), but the existence of serious harm tends to support an inmate's deliberate indifference claims, *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin*, 974 at 1060).

Once the prerequisites are met, it is up to the factfinder to determine whether deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  *See id.* at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d

10

1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970); however, the reliance by prison officials upon a second medical opinion which a reasonable person would likely determine to be inferior to one from a more qualified medical authority may amount to an Eighth Amendment violation.  *See Hamilton v. Endell*, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (prison's reliance upon medical opinion of doctor who had not examined plaintiff as opposed to plaintiff's regular physician violated prisoner's constitutional rights).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health.  *See Toguchi*, 391 F.3d at 1058.

A plaintiff need not prove complete failure to treat.  Deliberate indifference may be shown where access to medical staff is meaningless as the staff is not competent and does not render competent care.  *See Lolli v. County of Orange*, 351 F.3d 410, 420-21 (9th Cir. 2003) (holding that a jury could infer that correctional officers' failure to provide medical care in response to detainee's extreme behavior, sickly appearance and statements that he was diabetic and needed food demonstrated deliberate indifference); *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (summary judgment should not have been granted to defendants where plaintiff presented evidence that prison officials failed and refused to follow doctor's orders for a liquid diet for plaintiff whose mouth had been wired shut to treat a broken jaw); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had

11

been specifically alerted and without examination prescribed contraindicated sedatives).

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060-61; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Franklin*, 662 F.2d at 1344; *see, e.g., Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); *McGuckin*, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's 8th Amendment rights); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain); *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988) (no more than negligence stated where prison warden and work supervisor failed to provide prompt and sufficient medical care).

## II.   Analysis

In this case, Plaintiff complains that he did not receive adequate medical treatment at SVSP after being returned to the prison from Natividad Medical Center after surgery to repair a dislocated shoulder on July 23, 2002. Although Plaintiff suffered no complications during the surgery, Plaintiff complains that around 4:30 p.m. the day of the surgery, he began to bleed "excessively" and suffered extreme pain, nausea, weakness and dizziness.  Plaintiff complains that correctional and medical personnel at SVSP were deliberately indifferent to his serious medical needs.

Plaintiff complains that the following correctional staff were deliberately indifferent: Defendant Ybarra, who transported him back to the prison and signed for the discharge papers; Defendant Juarez, who was working in the tower and refused to press an emergency release button when Plaintiff's cell-mate and other inmates called out to

him about Plaintiff's condition; Defendant Fernandez, who transported him to the infirmary by borrowing a wheelchair when Plaintiff was complaining of these medical problems after the surgery; and Defendant Rankin, who authorized his return to his cell after he had been evaluated by medical staff at the infirmary and provided inadequate treatment.

Plaintiff has failed to establish that any of the named custody staff were deliberately indifferent to his serious medical needs.  Plaintiff has failed to provide any evidence that Defendant Ybarra was deliberately indifferent to his medical needs, based on his sole allegation that this Defendant signed for Plaintiff's discharge papers after the surgery.  That evidence alone does not establish that he knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it.  *Farmer*, 511 U.S. at 837 (1994).

It is not apparent from the amended complaint or Plaintiff's opposition the basis for his claim against Defendant Fernandez.  Although Plaintiff alleges that Defendant Fernandez (along with previously dismissed Defendant Hernandez) initially approached Plaintiff's cell when called by practically the "entire inmate building population" and refused Plaintiff's request that they press the alarm for emergency medical treatment, he further states that Fernandez then attempted to escort Plaintiff to the infirmary on A-Yard and borrowed a wheelchair to bring Plaintiff there when Plaintiff appeared unable to walk.  These allegations do not support a claim of Fernandez's deliberate indifference to Plaintiff's serious medical needs.  While perhaps Plaintiff takes issue with the amount of time involved to get him to the infirmary, where Plaintiff and his witness contend that the inmates called for assistance at approximately 4:30 p.m. and Plaintiff was seen in the infirmary at 4:55 p.m., the amount of delay involved is insufficient to establish deliberate indifference on the part of Fernandez.  *See McGuckin*, 974 at 1060.  Moreover, to the extent that this delay states a negligence claim, it is not actionable under § 1983.  *See Toguchi*, 391 F.3d at 1060-61; *Frost v. Agnos*, 152 F.3d at 1130.

13

Similarly, Plaintiff apparently takes issue with the fact that Defendant Juarez did not immediately sound the alarm based on the inmate population calling out "man down" in response to Plaintiff's condition.  Plaintiff's allegations further state that Juarez knew Plaintiff had earlier had surgery because he had opened the door on his return from the hospital. Witness Smith states that Juarez refused to press the button at 4:30 p.m., because he was aware the M.T.A. was unavailable due to caring for another inmate and that Juarez again called the M.T.A. at 4:37, but was told that they wouldn't attend to Plaintiff's condition.  Juarez then apparently opened the door for Plaintiff when he was accompanied by Defendant Officer Fernandez to the infirmary less than twenty minutes later.  Plaintiff has not established that Juarez was deliberately indifferent to his serious medical needs.  *Id.*

Plaintiff alleges that Defendant Lieutenant Rankin ordered that he be returned to his assigned cell after he was evaluated by medical staff and it was determined that he would not be transported to the C.T.C..for further treatment.  Defendant Bowman has established that medical staff make determinations about whether inmates are in need of medical care and that prison custody staff do not make such decisions. Plaintiff has offered no evidence to the contrary.  While Plaintiff alleges that the medical staff's response to his bleeding and pain were inadequate, he has not established that Rankin was deliberately indifferent for failing to override the decision by medical staff.  Nor can it be said based on the evidence before the Court that Plaintiff has established that Rankin was aware of and disregarded a substantial risk of serious harm to his health. *See Gibson*, 290 F.3d at 1188.

Plaintiff complains that the following medical staff were deliberately indifferent to his serious medical needs: Daniel Thor, who was the medical director at SVSP; Nurse Gosling who saw Plaintiff in the infirmary after his surgical wound started to bleed again and, after first contacting emergency medical staff at C.T.C. and speaking to Drs. Bowman and Helmer, reinforced the dressings on his wound and sent him back to his

14

cell, Opposition at 3; Dr. Pompan, who performed Plaintiff's surgery, saw him both before and after and recommended a regime of self-directed exercise in lieu of physical therapy; and Drs. Bowman and Helmer, who saw Plaintiff on his return to SVSP after surgery, prescribed different pain medication for Plaintiff where the one prescribed was not available, but did not personally see him before authorizing his return to his cell after suffering additional bleeding after surgery. *See Franklin*, 662 F.2d at 1344.

Plaintiff fails to set forth evidence establishing that Nurse Gosling was deliberately indifferent to his medical needs. The evidence before the Court establishes that Nurse Gosling saw Plaintiff in the infirmary when he was transported there by custody staff after his surgery, that she contacted the emergency medical staff to come to the infirmary, that the E.R. nurse saw him but did not take him to the C.T.C., that Gosling spoke to Drs. Bowman and Helmer who had seen Plaintiff earlier regarding his condition, and ultimately reinforced Plaintiff's bandages, after being advised to do so by these doctors. Nurse Gosling's notes document that when Plaintiff was returned to his cell, custody officers were present who were to notify the emergency room if Plaintiff suffered further bleeding. Young Decl. at H-25. Plaintiff has not established that Defendant Gosling's response to his condition was deliberately indifferent to his serious medical needs. To the extent that Plaintiff takes issue with Nurse Gosling's care, his claim does not rise to the level of an Eighth Amendment violation. *See Toguchi*, 391 F.3d at 1058.

Plaintiff alleges that Drs. Helmer and Bowman, who both saw Plaintiff when he returned from surgery, were both notified when he suffered additional bleeding, pain, nausea and dizziness and failed to adequately respond to his condition. Plaintiff complains that these doctors made medical judgments without personally seeing Plaintiff again (after seeing him earlier after his return from surgery.) Specifically, Plaintiff argues that due to the amount of blood that he lost, Defendants should have seen him personally to make sure that "Plaintiff's chest was not hanging open beneath the bloody

dressings...” Opposition at 8. Plaintiff repeatedly argues that the amount of blood he lost was so serious that Defendants are deliberately indifferent solely by virtue of the fact that they did not see him again personally, rather than relying on communications with Nurse Gosling in the infirmary. However, Plaintiff has not established that these doctors, having seen Plaintiff two hours earlier, were indifferent for discussing Plaintiff’s condition with the nurse on duty and advising her to reinforce his bandages and to have custody staff contact doctors if Plaintiff suffered further bleeding. *Franklin*, 662 F.2d at 1344.

Plaintiff also complains that prison officials were deliberately indifferent because he did not receive the different pain medications prescribed by Doctor Pompan, Helmer, Haffner and Bowman after his surgery. However, other than a blanket assertion that unspecified “officials” were deliberately indifferent for failing to provide these medications, Plaintiff does not set forth any evidence establishing that any of the named Defendants were ever informed that the prescribed medicine had not been administered to him and failed to take action to relieve Plaintiff’s pain. Without more, it cannot be said that medical personnel are deliberately indifferent to Plaintiff’s pain when they prescribed medications that he did not receive. Plaintiff has failed to “set forth specific facts as to each individual defendant’s” actions which violated his or her rights. *Leer*, 844 F.2d at 634. *Leer* explained that

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry....must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

*Id.* at 633-34 (citations omitted). Plaintiff has failed to do so with regard to any of the named Defendants.

With regard to Defendant Pompan, the only claim clearly raised against him in the

16

complaint other than the general complaints set forth above is that he failed to provide physical therapy for Plaintiff's rehabilitation after the surgery.  However, while Plaintiff apparently argues that the regime of self-directed exercises offered by Pompan for this purpose was inadequate, Plaintiff has not established that this preference was anything more than a difference of opinion with his doctor.  *See, Toguchi*, 391 F.3d at 1058-60; *Sanchez*, 891 F.2d at 242.  Plaintiff has not presented evidence of any deliberate indifference on the part of Defendant Pompan.

## III.   Supervisory Liability

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  *See Leer*, 844 F.2d at 634; *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  *See Leer*, 844 F.2d at 633; *see, e.g., Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent 8th Amendment violation may be basis for liability).

A supervisor may be liable under § 1983 only upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).  Under no circumstances is there respondeat superior liability under § 1983, that is, liability solely because one is responsible for the actions or omissions of another.  *Id.*  Plaintiff has not set forth a claim against Defendant Thor based upon his status as medical director at

17

SVSP.

## IV.    Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'"  *Burns v. Reed*, 500 U.S. 478, 495 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists.  The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* at 201.  If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail.  *See id.*  If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . .  'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment.  *Estate of Ford v. Caden*, 301 F.3d 1043, 1053 (9th Cir. 2002) (extending *Saucier* to Eighth Amendment claims).  A determination that there is a triable issue of fact as to whether defendants were deliberately indifferent does not necessarily preclude a finding of qualified immunity.

*Id.*     For a qualified immunity analysis, the court need not determine whether the facts alleged show that defendants acted with deliberate indifference.  *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).  Rather, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful.  *See id.* at 939 (granting qualified immunity on Eighth Amendment safety claim because reasonable prison official could have reasonably believed that defendants' conduct, as alleged, did not violate 8th Amendment).  It is possible for a prison official to know all of the facts alleged by plaintiff and to understand that he cannot recklessly disregard a substantial risk of harm to a prisoner, and yet to mistakenly, though reasonably, perceive that the risk of harm is not too high; such an official is entitled to qualified immunity.  *Estate of Ford*, 301 F.3d  at 1049-50 (granting qualified immunity to correctional officers where the information available to them about inmate's dangerous cellmate did not make it so clear that the cellmate would harm the inmate that no reasonable officer could have allowed them to be celled together).

The first step under *Saucier* is to determine whether a constitutional violation was alleged.  In this case, as discussed above, Plaintiff's complaint fails to allege an Eighth Amendment violation, in that the allegations are insufficient to establish deliberate indifference to Plaintiff's medical needs against any of the named Defendants.  As such, because Plaintiff cannot show that Defendants' conduct violated a right, Defendants prevail.

However, even if Plaintiff had shown that Defendants' conduct violated a right, he would still not prevail under the second step of the *Saucier* analysis.  The next step under *Saucier* is to consider whether the contours of the right were clearly established, an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  The law was clearly established that corrections or medical officials could not disregard a substantial risk of serious harm

19

to an inmate of which he was aware and had a duty to protect a prisoner therefrom.  *See*
*Farmer v. Brennan*, 511 U.S. at 833.  At the time that Plaintiff's claims against these
Defendants arose, "it would have been clear to a reasonable prison official that if he
knew about an excessive risk to inmate safety, and inferred from the facts of which he
was aware that a substantial risk of serious harm exists, he would violate the law by
disregarding it."  *Estate of Ford v. Caden*, 301 F.3d 1043, 1050 (9th Cir. 2002).

In *Estate of Ford*, the Ninth Circuit explained that, for an Eighth Amendment
violation based on a condition of confinement, the  prison official must subjectively have
a sufficiently culpable state of mind.  The Court stated,

> "[A] prison official cannot be found liable under the Eighth Amendment
> for denying an inmate humane conditions of confinement unless the
> official knows of and disregards an excessive risk to inmate health or
> safety; the official must both be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm exists, and he must
> also draw the inferences." . . .  Thus, a reasonable prison official
> understanding that he cannot recklessly disregard a substantial risk of
> serious harm, could know all of the facts yet mistakenly, but reasonably,
> perceive that the exposure in any given situation was not that high.  In
> these circumstances, he would be entitled to qualified immunity.  *Saucier*,
>
> 533 U.S. at 205.

*Estate of Ford*, 301 F.3d at 1050 (quoting *Farmer v. Brennan*, 511 U.S. at 834).

Applying *Estate of Ford* to the facts here, it would not have been clear to a
reasonable prison official that after Plaintiff was examined by the nurse, and doctors who
had seen him earlier determined that bleeding several hours after surgery was normal,
there still remained a substantial risk of serious harm to Plaintiff.  Because the law did
not put Defendants on notice that their conduct would be clearly unlawful, summary
judgment based on qualified immunity is appropriate.  *See Saucier*, 533 U.S. at 202.
Therefore, Defendants are entitled to judgment as a matter of law on their qualified
immunity defense.

## IV.    Unserved Defendants

Several Defendants here remain unserved (including Gosling, Juarez and Ybarra).

However, based on the evidence before the Court, it is apparent that the claims against these unserved Defendants are without merit and subject to summary adjudication. The allegations against them in the amended complaint are the same as those against the served Defendants. There is no suggestion in the complaint, the exhibits attached thereto, or in the briefs and exhibits filed in connection with the present motion, that the analysis differs with respect to the unserved Defendants as opposed to the served ones.

Accordingly, the Court will grant summary judgment in favor of the unserved Defendants. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9th Cir. 1995) (affirming district court's granting summary judgment in favor of non-appearing defendant, where plaintiff, in response to motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against non-appearing defendant). Moreover, these claims against the unserved Defendants are dismissed under the authority of 28 U.S.C. § 1915(e)(2)(B)(ii), because the Court has determined that they fail to state a claim for relief under the Eighth Amendment.

### CONCLUSION

For the foregoing reasons, the Court orders as follows,

Defendant's motion for summary judgment is GRANTED (docket no. 16). Plaintiff's motion to resolve all pending motions is GRANTED. (Docket no. 50.)

The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff. The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED:    8/11/2008

JEFFREY S. WHITE
United States District Judge